IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FRU-CON CONSTRUCTION, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-434 |
| MAYOR AND CITY COUNCIL OF BALTIMORE, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Fru-Con Construction, LLC ("Fru-Con" or "Plaintiff") brings this action against Defendants Mayor and City Council of Baltimore ("the City" or "Defendants"), seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Fru-Con asks this Court to determine the rights and responsibilities of each party to the Contract SC 855-Enhanced Nutrient Removal (ENR) Modifications to Existing Facilities at Patapsco Wastewater Treatment Plant. Currently pending before this Court is the City's Motion to Dismiss (ECF No. 15). The parties' submissions have been reviewed and this Court held a telephone conference on the record on October 14, 2014 to discuss the pending motion. For the reasons that follow, Defendants Mayor and City Council of Baltimore's Motion to Dismiss (ECF No. 15) is GRANTED.

## BACKGROUND

1

In a ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiffs. *See, e.g.*, Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff Fru-Con Construction, LLC, now known as Balfour Beatty Infrastructure, Inc.,[1] is a construction company organized under Delaware law and authorized to do business in Maryland. Compl. ¶ 14, ECF No. 1. On November 10, 2010, Fru-Con and the City of Baltimore entered into Contract SC 855-Enhanced Nutrient Removal (ENR) Modifications to Existing Facilities at Patapsco Wastewater Treatment Plant (the "Contract"). *Id.* at ¶ 1. Fru-Con agreed to perform the requisite construction work to replace, renovate, and upgrade seven discrete waste water process systems at the Patapsco Wastewater Treatment Plant ("the Plant"). *Id.* at ¶ 2. During the construction period, the Plant was to remain fully operational. *Id.*

The Contract sets forth detailed specifications of the work to be performed, the proposed timing of the contract, and, among other provisions, the procedures governing dispute resolution. *See* Compl. Ex. F, ECF No. 1-6. Specifically, the Contract provides a multi-step administrative process by which a Contractor's claim is reviewed.[2] *See id.* at 64-66. If, at the end of the administrative review, the Contractor disagrees with the final decision,

---

[1] On May 24, 2011, Fru-Con Construction Corporation assigned the Contract, with the City's approval, to Fru-Con Construction, LLC. Compl. ¶ 15, ECF No. 1. Less than a month later, Balfour Beatty Infrastructure, Inc. acquired all membership interests in Fru-Con Construction, LLC. The City again agreed to this transfer. *Id.* at ¶ 16. As of January 1, 2014, Fru-Con Construction, LLC is a wholly-owned division of Balfour Beatty Infrastructure, Inc. *Id.* at ¶ 17.

[2] The Contract is comprised of four separate components – the "Green Book, Construction Drawings, Project Manual, and the Book of Standards." Mem. in Supp. of Def.'s Mot. to Dismiss, 5 n.1, ECF No. 15-1. Among other provisions, the Green Book describes the administrative procedures a complaining party must follow if a dispute arises. *See id.* Essentially, a party must submit its dispute in a timely manner, and then the "Inspector assigned to the project, the Engineer, and the Division Head of Construction Management" will review the claim. Compl. Ex. F, at 64. If the party is displeased with the result, then it may appeal its claim up the chain of command. *Id.*

then it may submit the claim to "review on the record by a court of competent jurisdiction pursuant to the Baltimore City Charter."[3] *Id.* at 66.

As Fru-Con upgraded the Plant, it disagreed with the City over the proper interpretation of specific terms of the Contract. Compl. at ¶ 4. The relationship between the parties quickly soured. *Id.* After Fru-Con "substantially completed"[4] all specified modifications on August 12, 2013, the City proceeded to use each of the modified waste water systems. *Id.* at ¶ 3. Shortly thereafter, the City informed Fru-Con that Fru-Con must pay liquidated damages of $5,000 per day for the period of August 12, 2013 until Fru-Con achieved "Conditional Acceptance."[5] A flurry of correspondence between Fru-Con and the City commenced, as each party attempted to assert its own interpretation of the terms of the Contract. *See id.* at ¶¶ 6, 8, 100-10.

Finally, Fru-Con filed the subject Complaint (ECF No. 1) seeking declaratory relief in this Court to resolve any ambiguities and determine the proper interpretations of specific terms in the Contract. *See id.* at ¶¶ 112-114. Plaintiff argues that a declaratory judgment is appropriate due to the fundamental disagreements between the parties over their respective legal rights and obligations. *Id.* at ¶ 113. Defendants moved to dismiss the Complaint

---

[3] Article II, § 4A(g) Baltimore City Charter stipulates that:

> with regard to a construction contract to which it is a party, Baltimore City may provide or require that if there is a dispute between the parties involving $10,000 or more over the terms of the contract or performance under the contract, the dispute is subject to a determination of questions of fact by an officer or official body of Baltimore City, *subject to review on the record by a court of competent jurisdiction.*

Mem. in Supp. of Def.'s Mot. to Dismiss, at 5 (emphasis added).

[4] The significance of "substantial completion" and other key terms is at the core of the parties' contract dispute. *See id.* at ¶ 4. As this Court does not have subject matter jurisdiction over the dispute at this time, it is not necessary to delve into the merits of the competing interpretations.

[5] Again, the interpretation and import of "Conditional Acceptance" is critical to the resolution of the contract dispute, over which this Court does not yet possess subject matter jurisdiction. *See supra* note 2.

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (ECF No. 15). The City contends that this Court lacks subject matter jurisdiction over the dispute, as Fru-Con has failed to exhaust the administrative procedures set forth in the Contract. *See* Mem. in Supp. of Def.'s Mot. to Dismiss, 1-2. In response, Fru-Con argues that this Court does indeed have subject matter jurisdiction, such that declaratory relief is appropriate. Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss, ECF No. 16.

## STANDARD OF REVIEW

### I.   Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). When, as in this case, the challenge is facial, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. The plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

### II.   Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within

4

its jurisdiction, . . . any court of the United States, upon filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act, however, does "not provide a source of jurisdiction which is independent of substantive federal law." *Gibralter, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16-17 n.14 (1983)).

The United States Court of Appeals for the Fourth Circuit has "held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998); *see also Wilton v. Seven Falls Company*, 515 U.S. 277, 286 (1995. Further, the Fourth Circuit has provided guidance on the exercise of this discretion. Declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co.*, 139 F. 3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F. 2d 321, 325 (4th Cir. 1937)).

In an action seeking declaratory judgment, there is still a requirement imposed by Article III of the Constitution that there be a case or controversy. *See Rental Tools & Equipment Co. Int'l, Inc. v. Marsh & McLennan, Inc.*, 1989 WL 234697, *4 (D. Md. Sept. 25, 1989). Although this determination can be difficult for declaratory judgment actions, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

## ANALYSIS

The City, in moving for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, argues that Fru-Con's request for judicial review of the Contract is premature. The City does not offer its own, competing interpretation of the contested contractual language. Rather, it contends that the Contract requires that a party exhaust prescribed administrative procedures before asking the courts to intervene. Fru-Con, according to the City, may not be allowed to circumnavigate the administrative procedures to which both parties agreed when signing the Contract. Once Fru-Con exhausts the Contract's administrative procedures, then, and only then, may it submit its claim to a "court of competent jurisdiction."[6]

Maryland law establishes a strong preference for administrative exhaustion that may be excused only if a challenger can demonstrate that the reviewing agency is "palpably without jurisdiction."[7] *Heery Int'l, Inc. v. Montgomery County, Maryland*, 862 A.2d 976 (Md. 2004). As the Maryland Court of Appeals explained, "[w]here an administrative agency has

---

[6] During the October 14, 2014 telephone conference, the City agreed that this Court is "a court of competent jurisdiction" for purposes of the Baltimore City Charter and the Green Book. Fru-Con thus can appeal the administrative decision to this Court once it exhausts all administrative procedures.

[7] Under the guidance of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity must apply federal procedural law and the substantive law of the forum in which the court sits. The Maryland Court of Appeals has never addressed the question of whether the specific administrative procedures at issue are substantive or procedural law. In *Lewis v. Waletzky*, 31 A.2d 123, 134 (Md. 2011), however, the Maryland Court of Appeals explained that, among other factors, a court should look to whether a provision "establish[es], den[ies], or define[s] a cause of action . . . [or] prescribe[s] how liability is to be determined." In contrast to the administrative filing requirements in *Lewis*, the requisite administrative procedures in this case set forth precisely the manner in which liability is determined, such as who reviews a claim in each step of the administrative review. *See* Compl. Ex. F, at 64-66. Moreover, the Green Book, in accordance with the City Charter, establishes a cause of action for an aggrieved party who has already exhausted the administrative remedies. *See id.* at 66. As both Maryland law and federal law recognize a strong preference for exhaustion, the substantive-procedural dichotomy does not affect the outcome of the parties' present dispute.

primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy." *Heery*, 862 A.2d at 981 (quoting *State v. Bd. of Contract Appeals*, 773 A.2d 504, 510 (Md. 2001)); *see also Converge Servs. Group, LLC v. Curran*, 860 A.2d 871, 882 (Md. 2004) (explaining that, where administrative exhaustion is "explicitly direct[ed]," the courts' "policy is set clearly by the General Assembly to maintain the uniformity of the regulatory scheme" by adhering to the exhaustion requirement).[8] This general rule of administrative exhaustion is not absolute, but a party attempting to circumnavigate the prescribed procedures bears a heavy burden. To meet this burden is "a long and arduous road," as the complaining party must demonstrate that "a particular agency's actions are so clearly and unequivocally without authority as to be 'palpably without jurisdiction.'" *Heery*, 862 A.2d at 989. The costs of prolonged administrative litigation are insufficient. *See id.* Rather, the party must show some "irreparable injury" if it follows the prescribed administrative procedures. *Id.* (citing *West v. Bergland*, 611 F.2d 710, 718 (8th Cir. 1979)).

The exhaustion requirement is not an arbitrary decision to favor administrative agencies over the challengers. Rather, this requirement protects the twin objectives of respect for administrative authority and judicial economy. First, exhaustion protects the authority of the administrative agency that promulgated the disputed regulations by giving that agency the opportunity to interpret its own regulations. *See Heery*, 862 A.2d at 986

---

[8] Federal law establishes a similar preference for exhaustion of administrative procedures. As the United States Supreme Court concluded, "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *see also Thetford Properties IV Ltd. Partnership v. U.S. Dept. of Housing and Urban Development*, 907 F.2d 445, 448 (4th Cir. 1990) (recognizing the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted" (quoting *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938))).

(stating that "[w]e consistently have held that statutes should be interpreted in the first instance in contested case by the administrative agency"); *see also Maryland Comm'n on Human Relations v. Mass Transit Admin.*, 449 A.2d 385, 389 (Md. 1982) (concluding that exhaustion promoted "the principle that the agency's construction of a statute which it administers is entitled to weight"). In particular, if the regulations require "specialized knowledge or expertise regarding the underlying subject matter," then agency adjudicators proficient in that "specialized knowledge" are better suited to make the initial interpretation. *Heery*, 862 A.2d at 986.

Second, exhaustion of administrative procedures promotes judicial economy by "preventing piecemeal and interlocutory appeals from administrative decisions." *Id.* Such appeals delay both the administrative and judicial processes, while failing to resolve the entire dispute. In contrast to "piecemeal . . . appeals," the exhaustion requirement allows the parties to develop a full and complete record of the circumstances of their dispute. *See id.* This complete record, plus the agency's interpretation of its own statute, put the reviewing court in the best position to review the administrative decision and bring finality to the parties' dispute. Moreover, if an agency erred in its initial response to the dispute, the agency may correct its mistakes during the administrative review, and so spare a court from doing the same. *See McCarthy*, 503 U.S. at 145.

In this case, Fru-Con must exhaust the administrative procedures set forth by the Contract before it may seek judicial review. The Green Book, pursuant to the directive of the Baltimore City Charter, mandates that the prescribed administrative procedures are "the exclusive procedures for the prosecution and resolution of all claims and disputes under the

8

Contract." Compl. Ex. F, at 64. The Green Book is clearly not silent as to the proper remedy for any disputes under the Contract, nor are the prescribed administrative procedures merely optional. Rather, the language explicitly requires administrative exhaustion before the complainant may submit the dispute to "review on the record by a court of competent jurisdiction pursuant to the Baltimore City Charter." *Id.* at 66.

Moreover, Fru-Con has failed to demonstrate that the reviewing agency is "palpably without jurisdiction." *Heery*, 862 A.2d at 989. This excuse requires a complaining party to plead an "irreparable injury" if it is forced to navigate the prescribed administrative process. *Id.* Fru-Con, instead, offers four grounds in opposition to the City's Motion to Dismiss. None of the proffered arguments, however, establishes a plausible irreparable injury that would discharge the exhaustion requirement.

First, Plaintiff contends that diversity of citizenship under 28 U.S.C. § 1332 gives this Court subject matter jurisdiction regardless of Fru-Con's failure to exhaust administrative remedies. Diversity jurisdiction under § 1332 is present in this case. The parties are domiciled in different states – the City in Maryland and Fru-Con in Delaware – and the threshold damages amount has been met. Compl. ¶¶ 13, 19. Diversity jurisdiction alone, however, does not excuse a party from adhering to the exhaustion requirement. *See, e.g.*, *Volvo GM Heavy Truck Corp. v. U.S. Dept. of Labor*, 118 F.3d 205 (1997) (diversity jurisdiction was present, but the United States Court of Appeals for the Fourth Circuit upheld the District Court's order to exhaust the prescribed administrative procedures). A conclusion to the contrary would permit any diverse party to circumnavigate the administrative procedures to which he agreed when signing the contract. Far from respecting the authority of the

9

agency to interpret its own regulations, this conclusion would render administrative authority, and thus the exhaustion requirement, meaningless.

Second, Fru-Con argues that the prescribed administrative procedures apply solely to questions of fact, as opposed to questions of law. Fru-Con reasons that the dispute is purely legal, thereby obviating any need to follow the administrative process. The Baltimore City Charter provides that a "dispute is subject to a determination of *questions of fact* by an officer or official body of Baltimore City, subject to review on the record by a court of competent jurisdiction." Mem. in Supp. of Def.'s Mot. to Dismiss, at 5 (emphasis added). Yet, this language does not excuse compliance with the Contract's exhaustion requirement. Admittedly, the City Charter is the source of the City's authority to require that a complaining party submit its dispute to administrative review before judicial review. The Green Book, however, does not distinguish between questions of fact and questions of law. *See* Compl. Ex F, at 64. Rather, it stipulates that "*all* claims and disputes under the Contract" are subject to the specified administrative review process. *Id.* (emphasis added). The Green Book essentially recognizes that any potential dispute under the Contract would present mixed questions of law *and* fact. Fru-Con's position, on the other hand, assumes that, as a contract dispute, its claim cannot conceivably present any factual questions. Upon a careful review of the record, however, this Court would necessarily consider both factual and legal questions to determine the rights and obligations of the parties. The City's own administrative review must thus proceed before this Court may consider the dispute

Third, Fru-Con asserts that its claim is ripe for declaratory judgment, as this Court's intervention would help clarify certain critical ambiguities. Under the Declaratory Judgment

Act, this Court is authorized to "declare the rights and other legal relations of" a qualified requesting party. 28 U.S.C. § 2201(a). Plaintiff is a party seeking such a declaration of its rights and obligations under the Contract. If the Contract did not mandate administrative review, then Fru-Con would be free to submit its claim for declaratory relief. *See Icarom, PLC v. Howard County*, 904 F. Supp. 454 (D. Md. 1995) (with no administrative review procedures in place, this Court considered only the factors governing the justiciability of an action for declaratory judgment). The Declaratory Judgment Act, however, cannot surmount the general rule of administrative exhaustion. *See Volvo*, 118 F.3d at 212 (explaining that the propriety of a declaratory judgment is insufficient to discharge the exhaustion requirement). The prescribed administrative process is the appropriate channel through which Fru-Con should first seek clarification of alleged ambiguities under the Contract.

Finally, Plaintiff claims that the administrative procedures to which it agreed in the Contract are inadequate. Specifically, Fru-Con contends that, because City employees conduct the review of any disputes related to the Contract, they are predisposed to favor their own position. Yet, this argument ignores that a fundamental purpose of the exhaustion requirement is its protection of an administrative agency's authority to interpret its own regulations, statutes, and other guidelines. The City, as the entity promulgating the Green Book, has the requisite "specialized knowledge" to interpret and clarify the alleged ambiguities of the Contract. If Fru-Con, after exhausting the administrative procedures, is not satisfied with the City's conclusions, then it may submit its claim for review by this Court. Even further, Fru-Con has alleged no irreparable injury that would result from the

11

application of the exhaustion requirement. On the basis of its pleadings, Fru-Con has failed to demonstrate that the Contract's administrative procedures are inadequate.

In sum, Fru-Con must exhaust the administrative procedures set forth by the City Charter and the Green Book before it may seek judicial review. Although the exhaustion requirement is not absolute, Fru-Con has failed to demonstrate any irreparable injury that would excuse this requirement. Allowing Fru-Con to circumnavigate the prescribed administrative procedures would frustrate the twin goals of administrative exhaustion. Judicial intervention before exhaustion would undermine the authority of the City to interpret its own regulations. Further, Fru-Con's request for declaratory judgment would split this dispute into piecemeal appeals, the antithesis of judicial economy. Accordingly, Defendants Motion to Dismiss is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants Mayor and City Council of Baltmore's Motion to Dismiss (ECF No. 15) is GRANTED.

A separate Order follows.


Dated:      November 24, 2014            /s/_____
                                         Richard D. Bennett
                                         United States District Judge